UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

PROSYNTHESIS LABORATORIES, INC.
D/B/A UNJURY PROTEIN,

    Plaintiff,　　　　　　　　　　　　　Court File No.: 3:22-cv-655

v.

EUROFINS MICROBIOLOGY LABORATORIES, INC.,

    Defendant.

---

## BRIEF IN SUPPORT OF DEFENDANT EUROFINS MICROBIOLOGY LABORATORIES, INC.'S MOTION TO DISMISS

---

Defendant Eurofins Microbiology Laboratories, Inc., by and through the undersigned counsel, respectfully submits the following Brief in Support of its Motion to Dismiss (the "Motion"):

### INTRODUCTION

This is an Iowa breach of contract case disguised as a Wisconsin tort and statutory damages claim. This case involves a commercial dispute, between sophisticated entities, arising from laboratory testing and analysis services performed by Eurofins for its customer, Prosynthesis Laboratories, Inc. d/b/a Unjury Protein's ("Unjury" or "Plaintiff"), on Unjury's new protein product samples. Importantly, Eurofins' laboratory testing and analysis was performed pursuant to written terms and conditions that were signed and agreed to by Unjury's President, Jerome Krachenfels. These agreed terms govern the parties' business relationship, including this dispute, and establish monetary limitations of liability, describe the types of conduct for which Eurofins may be liable (which is limited to willful misconduct), and specify that disputes between the parties

1

shall be resolved under Iowa law. Recognizing it cannot state a claim under the contract (and perhaps having buyer's remorse over its agreement for Iowa law to apply), Unjury has not even pled breach of contract, instead casting its claims as negligence and violation of the Wisconsin Deceptive Trade Practices Act ("WDPTA"). As set forth below, however, the allegations in Unjury's Complaint, even accepted as true, fail to state a claim for relief.

Unjury's WDPTA claim fails because Unjury is not a member of the public for which that statute was created to protect. Furthermore, while Unjury avers that Eurofins' website content amounts to "untrue, deceptive, or misleading" representations, it fails to identify any falsity and disregards well established Wisconsin case law rejecting Unjury's theory that mere "puffery" can constitute an actionable deceptive representation. Unjury's negligence claim also fails based on the parties' agreed upon terms and conditions governing the Unjury/Eurofins relationship. As shown below, Unjury is contractually barred from asserting tort claims related to Eurofins' contractual testing services for any misconduct amounting to something less than willfulness. Accordingly, dismissal is proper.

## STATEMENT OF ALLEGED FACTS[1]

1. Eurofins Microbiology Laboratories, Inc. (hereinafter, "Eurofins") is a network of product testing laboratories, which provides a number of food testing services to various industries, including the food and pharmaceutical industries. Years prior to the events which give rise to this action, Unjury contracted with Eurofins for the testing of Unjury's protein powder products. *Compl.* ¶ 11.

---

[1] Other than identification and discussion of the parties' written and signed terms and conditions (which Unjury strategically omitted from the Complaint), the "facts" discussed herein assume the allegations in the Plaintiff's Complaint are true, which must be done for purposes of a motion to dismiss.

2. The Unjury-Eurofins relationship, as referenced in the Complaint, is governed by a Client Information Form and General Terms and Conditions of Business agreement signed by Jerome Krachenfels (the company's owner and President) on behalf of Unjury (hereinafter the "Eurofins/Unjury Contract")" (Ex. A).[2]

3. The following terms are included within the Eurofins/Unjury Contract:

> 9. Limitation of Liability
>
> 9.1 Except to the extent that such limitations are not permitted or void under applicable law: (a) [Eurofins] (together with its workers, office clerks, employees, representatives, managers, officers, directors, agents and consultants and all [Eurofins] partners and affiliates, the "[Eurofins] Indemnifying Parties") shall be liable only for the proven direct and immediate damage caused by the [Eurofins] Indemnifying Party's willful misconduct in connection with the performance of an order and then, only if [Eurofins] has received written notice thereof not later than six (6) months after the date of the customer's knowledge of the relevant claim (unless any longer period is prescribed under applicable law and cannot be contractually limited), and (b) in all cases (whether arising under contract, tort, negligence, strict liability, through indemnification or otherwise), the [Eurofins] Indemnifying Parties' liability per claim or series of related claims, and the customer's exclusive remedy, with respect to [Eurofins]' services which fall under these Terms and Conditions, shall be limited to the lesser of: (i) the direct and immediate loss or damage caused by the [Eurofins] Indemnifying Party's willful misconduct in connection with the performance of the order and (ii) ten times the amount [Eurofins] actually received from the customer in relation to the order up to fifteen thousand dollars ($15,000).
>
> 9.2 The [Eurofins] Indemnifying Parties shall not be liable for any indirect, direct or consequential loss or damage (including, but not limited to, loss of business, profits, goodwill, and business opportunities or similar) incurred by the customer or by any third party.
>
> 9.3 It is a condition of [Eurofins]' acceptance of an order that the customer indemnifies the [Eurofins] Indemnifying Parties for any losses,

---

[2] Because the business relationship is specifically referenced in the Complaint, and the terms of that relationship are central in reviewing the validity of Unjury's claims, this Court may consider the contents of the Eurofins/Unjury Contract in this Motion without converting the motion to a motion for summary judgment under Rule 56. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

injuries, claims and costs which the [Eurofins] Indemnifying Parties may suffer as a result of arising from or in any way connected with its role under or services or products or software provided pursuant to these Terms and Conditions, except to the extent that the [Eurofins] Indemnifying Parties are required to bear them according to these Terms and Conditions, and by placing an order the customer agrees to provide that indemnification.

Ex. A, Section 9.

4. Additionally, the Eurofins/Unjury Contract provides the following disclaimer of any obligations or liabilities beyond those set forth in the agreement itself:

13. Disclaimer and Miscellaneous

13.1 ALL TERMS, CONDITIONS, AND WARRANTIES (INCLUDING ANY IMPLIED WARRANTY AS TO THE MANNER, QUALITY AND TIMING OF THE TESTING SERVICE AND RESULTS, EQUIPMENT, PRODUCTS OR SOFTWARE SUPPLIED BY ED ARE EXCLUDED TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW. THE WARRANTIES, OBLIGATIONS AND LIABILITIES OF ES CONTAINED IN THESE TERMS AND CONDITIONS ARE EXCLUSIVE.

Ex. A, Section 13.1.

5. Finally, the Eurofins/Unjury Contract sets forth the following choice of law provision:

14. Governing Law/Jurisdiction

14.1 The construction, validity and performance of these Terms and Conditions shall be governed by the laws and the commercial courts of Des Moines, Polk County, Iowa in which the registered office of the [Eurofins] company which accepted the order in question is located (including in cases involving multiple counsels for the defense or third-party respondents) which shall have exclusive jurisdiction.

Ex. A, Section 14.

6. In April of 2022, Unjury transported samples of two prospective products to Eurofins for standard microbiological pathogen testing. *Compl.* ¶ 10. Eurofins' New Berlin,

Wisconsin laboratory facility received Unjury's product samples on April 28, 2022 and began analyzing the product samples. *Compl.* ¶ 13.

7. On May 2, 2022, Eurofins notified Unjury of a "presumptive positive result" for Unjury's product, which means a pathogen was substantially likely to be detected within Unjury's product sample. *Compl*. ¶ 14. On May 4, 2022, Eurofins reported that Unjury's product tested positive for *Salmonella. Compl.* ¶ 16.

8. Eurofins conducted further investigation into the sample results, and concluded that the specific serotype, or strain, of *Salmonella* present in Unjury's product sample was *Salmonella* Senftenberg (*S*. Senftenberg). *Compl.* ¶ 20.

9. In response to questions raised by Unjury, Eurofins noted that other *Salmonella* detections within the lab had occurred prior to or around the same timeframe as Unjury's "presumptive positive." *Compl.* ¶¶ 19, 20.

10. Unjury alleges that Eurofins' facility contaminated its product samples and, therefore, that Eurofins' positive Salmonella result was incorrect or unreliable. *Compl.* ¶¶ 18-23.

11. Based on these and other allegations in the Complaint, Unjury asserts the following causes of action: 1) violation of Wisconsin's Deceptive Trade Practices Act, and 2) negligence. *Compl*. ¶¶ 29-35, 36-41.

## ARGUMENT

Eurofins is asking the Court to dismiss the case altogether pursuant to Federal Rule 12(b)(6) for the reasons outlined as follows.

### I. Dismissal is proper because Unjury fails to state a claim upon which relief can be granted.

Rule 12(b)(6) permits a defendant to move for dismissal of a complaint where it fails to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). To withstand a

motion to dismiss, a complaint must allege sufficient facts to plausibly suggest a claim for relief. *Bell v. Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). As such, a complaint "must do more than recite the elements of a cause of action in a conclusory fashion." *Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016).

      **a.    Unjury's Wisconsin Deceptive Trade Practices Act claim lacks required elements and therefore should be dismissed.**

Unjury asserts that Eurofins' actions violate the WDTPA, Wis. Stat. § 100.18. *Compl.* ¶¶ 29-35. To state a claim under the WDTPA, Unjury must allege facts supporting three elements: (1) that Eurofins made a representation to the public with the intent to induce an obligation, (2) that the representation was untrue, deceptive, or misleading, and (3) that the representation caused Unjury a pecuniary loss. *Cota v. Ralph Lauren Corporation*, 2022 WL 1597631, *2 (E.D. Wis. May 19, 2022) (citing *Novell v. Migliaccio*, 749 N.W.2d 544 (Wis. 2008)). Unjury cannot satisfy any of these three elements.

          **i.    Unjury is not a member of the public for which the WDTPA was enacted to protect.**

Unjury's WDTPA claim fails because Unjury is not a member of the public for which the statute was enacted to protect. First, Wisconsin law does not allow Unjury to assert a WDTPA case on behalf of its customers. In its Complaint, Unjury alleges that "Eurofins made representations to the public, including Unjury's patients and customers," that, among other things, "Eurofins is 'the world leader in food, environment, pharmaceutical, and cosmetic product testing.'" *Compl.* ¶ 32. But, it is not enough that a representation merely be made to *anyone* or to

a Plaintiff's customers; rather, the question is whether the representation was made *to* the Plaintiff, who itself must be member of the public at the time of the statement.

"As a number of federal trial courts have framed it, the first relevant question is whether plaintiff is a member of the 'public' or the audience to whom the misrepresentation is directed, in order to bring a claim under sec. 100.18(1)." *In re C2R Global Manufacturing*, 617 B.R. 618, 622 (Bankr. E.D. Wis. 2020) (citing *Clark Tech. LLC v. Corncob Inc.*, No. 18-CV-1559-JPS, 2019 WL 4279462, at *14 (E.D. Wis. Sept. 10, 2019) (citing *Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 922-23 (W.D. Wis. 2010) (relying on purpose of section 100.18, "to protect the residents of Wisconsin from any untrue, deceptive or misleading representations made to promote the sale of a product' to a consumer" to conclude the statute is not designed to protect product manufacturers from the deceptive acts of their competitors)); *Hackel v. Nat'l Feeds, Inc.*, 986 F. Supp. 2d 963, 980 (W.D. Wis. 2013) ("Whether the statement was made to plaintiff as a member of the public largely turns on 'the particular relationship between the parties.'"); *K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 732 N.W.2d 792, 799 (Wis. 2007) (same); *State v. Automatic Merchs. of Am.*, 221 N.W.2d 683, 662 (Wis. 1974) (same).

Accordingly, Unjury must, at the very least, allege that it is a member of the public to which the representations were made to state a WDTPA claim. *Id.* However, Unjury does not allege itself to be a member of the public. In fact, Unjury fails to allege whether, when, where, by whom, and how the website statements were read or relied on by Unjury (which is headquartered in Virginia) *at all*. As a Virginia company, it is unclear how Unjury could claim itself to have read Eurofins' website in Wisconsin, which in and of itself dooms Unjury's claim. *Jou v. Kimberly-Clark Corp.*, No. C-13-03075 JSC, 2013 WL 6491158, at *12 (N.D. Cal. Dec. 10, 2013). ("A Wisconsin corporation does not violate the statute if it creates a deceptive label in Wisconsin and then places

the label in a publication outside of Wisconsin; the deceptive label must be placed before the public in Wisconsin. Since Defendant did not violate the WDTPA by selling its products in California and because Plaintiffs have not suffered pecuniary loss because of the placement of the allegedly deceptive products in Wisconsin, Plaintiffs have not stated a claim under the WDTPA.").

Perhaps recognizing this fatal flaw, Unjury instead claims that "Eurofins made representations to the public, including Unjury's patients and customers." *Compl.* ¶ 32. As this Court has succinctly stated, to assert a WDTPA claim on behalf of one's customers, as Unjury does in its Complaint, is "nonsensical." *Spacesaver Corp. v. Marvel Group, Inc.*, 621 F. Supp. 2d 659, 663–64 (W.D. Wis. 2009) ("[I]f [sec.] 100.18 extends to misrepresentations made to nonparties, application of the statute becomes almost nonsensical.").

Unjury's claim further fails because, based on its own allegations, Unjury is removed from "the public" in the context of Eurofins' statements. In its Complaint, Unjury acknowledges that it "beg[a]n its business relationship with Eurofins several years earlier. . ." and "selected Eurofins to test this new batch of product, as it had on many prior occasions." *Compl.* ¶ 11. Accordingly, it is undisputed that an ongoing business relationship existed for several years between Unjury and Eurofins before the subject dispute.

It is well established Wisconsin law that where a particular relationship exists between the parties, such as a contractual one, then that relationship distinguishes a plaintiff from a member of the public more generally. *K & S Tool*, 732 N.W.2d at 800 ("a plaintiff is no longer a member of 'the public' for the purpose of Wis. Stat. § 100.18(1) once he or she has entered into a contract to purchase the offered item."); *Automatic Merchs.*, 221 N.W.2d at 663 (if a particular relationship exists between the parties—i.e., a contractual one—then that relationship distinguishes plaintiff from a member of the public more generally); *see also, Kailin v. Armstrong*, 643 N.W.2d 132, 149

(Wis. Ct. App. 2002) (same); *Uniek, Inc. v. Dollar General Corp.*, 474 F. Supp. 2d 1034, 1039 (W.D. Wis. 2007) (same).

Furthermore, Wisconsin's appellate courts have unequivocally stated that nothing in § 100.18 provides a contracting party a right to any remedy for post-contractual representations. *See Kailin*, 643 N.W.2d at 149 ("We see no indication in the language of § 100.18(1) that the legislature intended to address untrue, deceptive, or misleading assertions, representations, or statements of fact made by one party to another after they entered into a contract."); *see also, Uniek*, 474 F. Supp. 2d 1034, 1039-40 (dismissing WDTPA claim against manufacturer, which had an ongoing relationship with the retailer for thirteen years, for not being a member of "the public").

Wisconsin law forecloses Unjury from bringing the WDTPA claim that is asserted in the Complaint because Unjury cannot bring a WDTPA claim on behalf of others, the WDTPA does not apply to any post-contractual representations or statements, and Unjury is not a member of the "public" the Wisconsin legislature seeks to protect through WDTPA's codification. Wisconsin courts agree that, although the question of whether a particular plaintiff qualifies as a member of the public entitled to bring a cause of action under the fraudulent representation provision of the WDTPA is not a pure question of law, the issue can be decided "where 'the undisputed facts establish that plaintiff had a particular relationship' with the defendant." *In re C2R Global Manufacturing*, 617 B.R. at 624 (quoting *Bates v. Wisconsin Dep't of Workforce Dev.*, 636 F. Supp. 2d 797, 811 (W.D. Wis. 2009) *aff'd sub nom. Bates v. Wisconsin Dep't of Workforce Dev.*, 375 Fed. App'x 633 (7th Cir. 2010)). Therefore, the Complaint fails to plausibly state a WDTPA claim upon which relief may be granted and the Court should dismiss it pursuant to Rule 12(b)(6).

### ii. Unjury fails to state how Eurofins' website content amounted to untrue, deceptive, or misleading representations that induced obligations by Unjury.

Under the terms of the WDTPA, a plaintiff asserting a § 100.18 claim must allege that the defendant has, "with the specific intent, made an 'advertisement, announcement, statement, or representation. . . to the public,'" which contains an "assertion, representation or statement of fact" that is "untrue, deceptive or misleading." Wis. Stat. § 100.18(1).

Unjury's WDTPA claim appears to be based entirely on statements from Eurofins' now-existing[3] website.[4] Yet Unjury has failed to assert how such statements are untrue, deceptive, or misleading as contemplated under the WDTPA. It is well established that "WDTPA claims cannot be premised on expressions of opinion or statements of mere 'puffery'." *Id.; see also Slane v. Emoto*, 582 F.Supp.2d 1067, 1085 (W.D. Wis. 2008) ("A statement is not a representation of fact if it expresses mere opinions on quality, value, authenticity or other matters of judgment. Thus, a

---

[3] As further evidence that Unjury's WDTPA claim is fabricated for litigation, the Complaint quotes Eurofins' website without providing citations about *when* those quotations existed on the website, much less whether, when, where and by whom those quotations were actually read and relied on. Of course, Unjury is quoting from Eurofins' *current* website as opposed to its website as it existed when the parties began conducting business.

[4] Unjury's Complaint also alleges Eurofins did not timely disclose to Unjury information about other positive Salmonella sampling testing at Eurofins' New Berlin, Wisconsin facility that, according to Unjury, call the Unjury Salmonella result into question. For example, Unjury alleges that "Eurofins shared only incomplete, misleading information with Unjury following its 'presumptive' and then 'positive' reports provided in early May," and "failed to promptly disclose the April 19 environmental positive for Salmonella." Compl. ¶ 25-26. Unjury's WDTPA claim does not appear to be based on these non-disclosures. In any event, they are not actionable under Wisconsin law, because "a nondisclosure is not an 'assertion, representation or statement of fact under Wis. Stat. § 100.18," and "silence is insufficient to support a claim" under the statute. *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 245 (Wis. 2004). "[T]o permit a nondisclosure to quality as an actionable 'assertion, representation or statement of fact' under Wis. Stat. § 100.18(1) would expand the statute far beyond its terms." *Id.* Moreover, these alleged statements or omissions were not made "to the public," but rather in private correspondence and conversations.

general statement that one's products are best is not actionable as a misrepresentation of fact."). "Puffery" has been defined as "the exaggerations reasonably to be expected of a seller as to the degree of quality of his product, the truth or falsity cannot be precisely determined." *Id.; see also United Concrete & Constr., Inc. v. Red-D-Mix Concrete, Inc.*, 836 N.W.2d 807 (Wis. 2013). Representations related to quality are "classic examples" of puffery for which this Court has stated, "no reasonable person would rely." *Uebelacker v. Paula Allen Holdings, Inc.*, 464 F. Supp. 2d 791, 806 (W.D. Wis. 2006); *see also, State v. American TV & Appliance of Madison, Inc.*, 430 N.W.2d 709, 713 (Wis. 1988).

Unjury's claim is based on Eurofins' website touting itself as "the world leader in food, environment, pharmaceutical, and cosmetic product testing," "committed to provide the highest services, accurate results in time, and expert advice by its highly qualified staff," with "reliability and accuracy," having made "large investments in innovation, technology, IT, and logistics," and having a high "level of expertise, technological leadership, attention to quality and customer service that have made Eurofins the global leader in many of the fields where it is active." *Compl.* ¶ 12. To the extent these statements even rise to the level of a representation, they are classic statements of puffery and quality and therefore not actionable under the WDTPA.

Furthermore, the website statements have no causal relationship to Unjury's WDTPA claim. Unjury has brought this suit claiming, in sum, that Eurofins contaminated Unjury's product samples with *S. Senftenberg*. Unjury has failed to plead how any of Eurofins' alleged "representations" falsely warranted Eurofins' laboratories as being free from any risk of contamination and false negatives, or other statistically certain accident, or otherwise meeting a level of absolute perfection. Science simply does not provide such a level of accuracy and assurance, as the parties are well aware. Rather, Unjury refers to representations related to

11

Eurofins' investments into the testing industry and experience which have no relationship to the crux of Unjury's suit. In other words, Unjury's claims, even accepted as true, do not make the above website puffery untrue. Therefore, there is no false statement upon which Unjury relied that somehow caused Unjury's alleged damages. As such, Unjury's WDPTA claim further fails and should be dismissed.

   **b. Unjury's negligence claim is barred by the Terms of Business between Unjury and Eurofins and the economic loss doctrine.**

As noted above, Unjury contractually agreed to limit Eurofins' liability to "the proven direct and immediate damage caused by [Eurofins'] willful misconduct in connection with the performance of an order. . ." Ex. A, Section 9.1. Unjury also agreed that "ALL TERMS, CONDITIONS AND WARRANTIES … AS TO THE MANNER, QUALITY AND TIMING OF THE TESTING SERVICE AND RESULTS … SUPPLIED BY [EUROFINS] ARE EXCLUDED TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW," and that "THE WARRANTIES, OBLIGATIONS AND LIABILITIES OF [EUROFINS] CONTAINED IN THESE TERMS AND CONDITIONS ARE EXCLUSIVE. Ex. A, Section 13.1. Finally, the parties agreed "[t]he construction, validity, and performance of [the Eurofins-Unjury Contract] … shall be governed by the laws [. . .] of [] Iowa." Ex. A, Section 14.1.

At the outset, it is worth noting that these are not terms and conditions referenced on a website, hidden on the back of a purchase order or invoice, or buried in a 100-page document, as is sometimes the case in these commercial disputes (and which, in any event, are still generally enforceable). Rather, these terms and conditions are part of a simple three-page contract presented to and "signed and accepted by" Jerome Krachenfels, the long-time owner and President of Unjury. If Unjury had insisted on more extensive liability options, Eurofins could have either charged more money for its services or refused to do business with Unjury. Because Unjury accepted these terms

and performed under them (and accepted the benefits of them) for several years, they should be enforced. And if they are enforced, as discussed below, Unjury's negligence claim fails under both Iowa and Wisconsin law.

> i. **Unjury's negligence claim is barred by Sections 9.1 and 13.1 of the parties' contract.**

Limitation of liability provisions are enforceable under both Iowa and Wisconsin law. Starting with Iowa law (since the contract states that it is governed by Iowa law), parties are free to contract to limit the scope of liability. *See Smith v. All Stor Fort Knox, LLC,* 924 N.W.2d 534 (Iowa Ct. App. 2018). "The cardinal principle for contract construction is the parties' intent controls as determined by what the contract says." *Id.* at 56. Iowa courts "will not curtail the parties' liberty to contract, including exculpatory agreements, unless a special relationship or public policy indicates otherwise." *Id.* (citing *Baker v. Stewarts' Inc.*, 433 N.W.2d 706, 707–08 (Iowa 1988)). "Th[e] contract speaks for itself." *Id.* (citing *Sutphin v. Holbrook*, 97 N.W. 1100, 1102 (Iowa 1904)). Under Iowa law, "contracts exempting a party from its own negligence are enforceable and not contrary to public policy." *Id.* (citing *Huber v. Hovey*, 501 N.W.2d 53, 55 (Iowa 1993). Because Iowa law promotes the enforcement of contractual provisions as written, and the limitation of liability provision uses the specific legal language, Eurofins' liability is limited to "willful misconduct" in connection with the performance of an order, Iowa law merits the enforcement of this provision.

Wisconsin law also supports application of the parties' agreed contractual limitations on the type of conduct that is actionable against Eurofins related to its testing services. This suit aligns squarely with a recent Wisconsin Supreme Court case in which the court enforced a limitation of liability provision congruent to the clause included in the Eurofins/Unjury Contract and dismissed the claimant's negligence action.

In *Superior Silica Sands, LLC v. Herman Grant Company, Inc.*, 948 N.W.2d 491 (Table), 2020 WL 4300831 (Wis. 2020) (unpublished), Superior, a party to a "Design/Build Contract" entered into for the construction of a plant, sued for lost profits, repair costs, and loss adjustment and professional fees. Just like in the Eurofins/Unjury contract, the Design/Build contract in *Superior* "contained a limitation of remedies provision, which stated the remedies set forth in the contract were 'the sole and exclusive remedies of the Parties to this Contract for the liabilities of such Parties arising out of or in connection with the Work or this Contract, notwithstanding any remedy otherwise available at law or in equity.'" *Id.* at 491, ¶ 7. The limitation of remedies provision further precluded recovery of indirect, special, incidental, consequential, or exemplary damages. *Id.* at *2-3. The Wisconsin Supreme Court affirmed a declaratory judgment by the circuit court, stating that the contract "expressly prohibits Superior from recovering [lost profits, the cost to repair the sand dryer, and loss adjustment and professional fees]," noting that parties "may agree to limit the available remedies for breach," and that "[c]ommerical parties, presumably of equal bargaining power, are generally free to set terms of their own agreement, including warranties, disclaimers, and limitation of remedies." *Id.* at *7. The court was unpersuaded by Superior's attempts to impute the disfavor for limitations of liability consistently applied in UCC cases to contracts outside of the UCC's purview.

Because Wisconsin views the limitation of liability provision as valid and enforceable, and because the provision limits Unjury to claims involving Eurofins' willful misconduct, Unjury's negligence claim must be dismissed. "Willful" means "deliberate or intentional." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). Thus, "willful" means more than mere negligence. *Id.* at 61-62 ("willful" "triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts."). Unjury's negligence claim, however, sounds in pure negligence and

14

alleges the unintentional, as opposed to the willful and intentional, failure to use "reasonable care, skill, experience, and judgment." Unjury's negligence claim, therefore, is foreclosed by the parties' limitation of liability provision.

### ii. Unjury's negligence claim is barred by the economic loss doctrine as applied by this court.

In addition to its foreclosure pursuant to the operative contractual provisions between the parties, Iowa's economic loss doctrine further requires dismissal of this claim. *See ERA Franchise Systems, LLC v. Hoppens Realty, Inc.*, No. 12-cv-594-slc, 2013 WL 3967869, at *8-9 (W.D. Wis. July 31, 2013) (Crocker, Mag.) (applying the governing law provision of the parties' service contract to the economic loss doctrine and dismissing counterclaimant's tort claims related to allegation that certain representations made to counterclaimant induced entry into business relationship and service contract).[5] It is a "well-established general rule [] that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *Neb. Innkeepers, Inc. v. Pittsburg-Des Moines Corp.*, 345 N.W.2d 124, 126-28 (Iowa 1984) (citing *Robins Dry Dock & Repair Co. v. Flint,* 275 U.S. 303, 309 (1927)). Put differently, when "two parties have a contractual relationship, the economic loss rule prevents one party from bringing a negligence action against the other over the first party's defeated expectations—a subject matter the parties can be presumed to have allocated between themselves in their contract." *Annett Holdings, Inc. v. Kum & Go, L.C.,* 801 N.W.2d 499, 503 (Iowa 2011).

The court has defined "purely economic loss" as a loss not related to physical harm. *Id.* at 128. To escape this rule, "[a]t a minimum, the damage for which recovery is sought must extend

---

[5] Iowa law does not confine the economic loss rule to situations where the defendant was supplying a product. *Audio Odyssey, Ltd. v. U.S.,* 373 F.3d 870, 872-73 (8th Cir. 2004) (applying Iowa's economic loss rule to a service relationship).

15

beyond the product itself." *Determan v. Johnson*, 613 N.W.2d 259, 262 (Iowa 2000). Yet, Unjury's negligence claim is solely based upon economic losses unrelated to any physical harm. *See* Compl. ¶ 40 (claiming damages for costs arising from retention of expert consultants, additional testing, product remediation, attorneys' fees, lost opportunities, lost profits, lost business advantage, lost product, and lost management time). Consequential economic losses such as lost profits are nonrecoverable under this doctrine. *See Nationwide Agribusiness Ins.*, 816 F. Supp. 2d 631, 637-38, 685 (N.D. Iowa 2011) (defendants sought to recover "'consequential economic loss damages,'" not personal injury damages); *Tomka v. Hoechst Celanese Corp.*, 528 N.W.2d 103, 105, 107-08 (Iowa 1995) (defendant sought to recover lost profits and loss of good will for damages to cattle he did not own, which are "consequential economic loss damages"); *Beyond the Garden Gate, Inc. v. Northstar Freeze-Dry Mfg., Inc.*, 526 N.W.2d 305, 310 (Iowa 1995) (plaintiff could recover the difference between what it paid for the machine and what it sold it for under its breach-of-express-warranty theory against seller, but it could not recover "consequential economic loss damages," including "repair bills, ... lost training profits, and lost business profits").

Accordingly, because Unjury's claim merely "relates to the customer or user's disappointed expectations," the remedy of which lies in contract, Unjury's negligence claim should be dismissed. *Nelson v. Todd's Ltd.*, 426 N.W.2d 120, 124 (Iowa 1988).

## **CONCLUSION**

For the foregoing reasons, Eurofins respectfully requests that this Court dismiss this action for failure to state claims upon which relief can be granted.

16

Respectfully submitted this the 6th day of December, 2022.

>*/s/ Patrick L. Breen*
>
>Patrick L. Breen (1102833)
>CLAUSEN MILLER PC
>4650 West Spencer Street
>Appleton, Wisconsin 54914
>(920) 560-4658
>pbreen@clausen.com
>
>M. Todd Lowther (*Pro Hac motion forthcoming*)
>BARZE TAYLOR NOLES LOWTHER LLC
>Lakeshore Park Plaza
>2204 Lakeshore Drive, Suite 425
>Birmingham, Alabama 35209
>(205) 872-1032
>tlowther@btnllaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on this the 6th day of December, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to the following persons:

James R. Koby
KOBY LAW, LLC
201 Main Street, Suite 620
La Crosse, Wisconsin 54601
(608) 782-1800
jkoby@kobylawllc.com

Patrick Yarborough
Marshal J. Hoda
FOSTER YARBOROUGH PLLC
917 Franklin Street, Suite 220
Houston, Texas 77002
(713) 331-5254
patrick@fosteryarborough.com
masrshal@fosteryarborough.com

                                          */s/ Patrick L. Breen*
                                          Of Counsel